[S. F. No. 6324. Department One.—March 19, 1914.]

ABBEY LAND AND IMPROVEMENT COMPANY (a Corporation), et al., Respondents, v. THE COUNTY OF SAN MATEO et al., Appellants.

NEW TRIAL—WHEN MOTION FOR CANNOT BE ENTERTAINED—SUBMISSION OF CAUSE UPON PLEADINGS.—Where there has been no trial of a cause upon issues of fact, it having been submitted for decision on the pleadings, a motion for a new trial cannot be entertained.

MUNICIPAL CORPORATIONS — POLICE REGULATIONS — CONSIDERATION OF SURROUNDING CIRCUMSTANCES.—In determining the advisability or necessity of a proposed police measure, a legislative body is presumed to take into consideration the circumstances and conditions under which the thing to be regulated or forbidden exists or may occur. And courts, in considering the question whether or not such

measure is reasonable in its application and effect, may also look to these general circumstances and conditions, so far as they are matters of judicial knowledge, and so far as they may be admitted or shown by undisputed, clear, and satisfactory evidence in the record of the particular case.

ID.—CREMATORIES—VALIDITY OF ORDINANCE RESTRICTING NUMBER.—A county ordinance which prohibits the establishment or maintenance in any one township of more than one crematory for the cremation of human bodies cannot be upheld as a police measure as against a cemetery association located near another crematory and in close proximity to several cemeteries and in a neighborhood where there are but few dwelling-houses and no buildings devoted to any business except that of burying the dead.

ID.—INJUNCTION AGAINST ENFORCEMENT OF ORDINANCE—WHEN LIES.— Such cemetery association is entitled to an injunction against the enforcement of the ordinance, under the doctrine that an action will lie to enjoin the enforcement of a municipal ordinance in cases where such enforcement will cause substantial and irreparable injury to private property or private property rights, and where there is no adequate remedy in the ordinary course of law.

ID.—JUDICIAL NOTICE—PROCESS OF CREMATION.—The practice of cremation has become so general, and crematories are now so common in many of the larger cities, that courts may take judicial notice of the usual method of operation of such institutions.

APPEAL from a judgment of the Superior Court of San Mateo County and from an order refusing a new trial. Geo. H. Buck, Judge.

The facts are stated in the opinion of the court.

Franklin Swart, for Appellants.

Ross & Ross, for Respondents.

SHAW, J.—The plaintiffs' action is a suit in equity to enjoin the enforcement of an ordinance passed by the board of supervisors of San Mateo County. The members of the board are joined as defendants. An answer was filed and the case came on for trial. The defendants moved for judgment on the pleadings, and the parties stipulated that the case should be submitted upon the pleadings, leaving the court to decide for either party as it should deem proper under the law and upon the facts stated. The defendants' motion was

denied and judgment was given for plaintiffs, from which the defendants appeal.

There is also an appeal from an order dismissing the defendants' motion for a new trial. There was no trial of the cause upon issues of fact and, therefore, a motion for a new trial could not be entertained. The court below properly refused to consider it, and it calls for no further discussion in this court. (*Foley* v. *Foley,* 120 Cal. 36, [65 Am. St. Rep. 147, 52 Pac. 122] ; *Gregory* v. *Gregory,* 102 Cal. 52, [36 Pac. 364]; *In re Heldt,* 98 Cal. 554, [33 Pac. 549] ; *Younger* v. *Moore,* 8 Cal. App. 237, 241, [96 Pac. 1093].)

The ordinance in question was adopted on June 5, 1911. It prohibits the establishment or maintenance, in any one township of said county, of more than one crematory for the cremation of human bodies, and provides that none shall be established in any township, unless the site is first approved by the supervisor of the township and a written permit is given therefor by the board of supervisors. A violation of the ordinance is declared to be a misdemeanor, punishable by a fine not exceeding five hundred dollars, or, by imprisonment not exceeding six months, or both. Each day upon which such crematory was maintained is declared to be a new and separate offense.

At and for many years before the time of the passage of the ordinance, a crematory had been and was carried on at the cemetery known as "Cypress Lawn Cemetery," which was less than a quarter of a mile from the premises of the plaintiffs. Long before its passage the plaintiffs had established and maintained on their premises a cemetery known as "Mount Olivet Cemetery," and had made improvements thereon, for that purpose of the value of seventy-five thousand dollars. They desire to erect and maintain a crematory, in connection with said cemetery, and upon said premises, and they are prevented from doing so by the prohibitory and penal provisions of said ordinance.

There are some denials in the answer which appear to raise an issue upon the question whether or not the proposed crematory will be particularly offensive to the senses or detrimental to health, by reason of the manner in which it is to be constructed and operated. This point is not urged in the argument on this appeal, and from the record it appears that the

cause was submitted to the court below for decision upon the theory that the proposed crematory would be properly constructed and operated, and that this could be done without the creation of a nuisance through smoke, odors, or dust. We will therefore assume that these denials were waived or withdrawn, although technically, their presence would be good ground for denying judgment on the pleadings if the controverted allegations are material to such judgment. The case is presented to us upon the proposition that it is competent for the board of supervisors to restrict the number of crematories as provided in the ordinance, assuming that they will be properly carried on. The ordinance in question does not attempt to regulate the operation of crematories. It is directed solely to the number of them and to the places where they may be carried on. The question presented, therefore, is whether the prohibition of more than one crematory in any one township of San Mateo County is a reasonable exercise of the police power.

In determining the advisability or necessity of a proposed police measure, the legislative body is presumed to take into consideration the circumstances and conditions under which the thing to be regulated or forbidden exists or may occur. The courts, in considering the question whether or not such measure is reasonable in its application and effect, may also look to these general circumstances and conditions, so far as they are matters of judicial knowledge, and so far as they may be admitted or shown by undisputed, clear, and satisfactory evidence in the record of the particular case. There are many instances in our own jurisprudence where this has been done. (*Ex parte Smith*, 143 Cal. 368, [77 Pac. 180] ; *Odd Fellows Cem. Assoc.* v. *San Francisco*, 140 Cal. 234, [73 Pac. 987] ; *Laurel Hill Cem.* v. *San Francisco*, 152 Cal. 472, [14 Ann. Cas. 1080, 27 L. R. A. (N. S .) 260, 93 Pac. 70] ; *Ex parte Quong Wo*, 161 Cal. 224–233, [118 Pac. 714] ; *Ex parte Montgomery*, 163 Cal. 458, [Ann. Cas. 1914A, 130, 125 Pac. 1070] ; *Ex parte Hadacheck*, 165 Cal. 421, [132 Pac. 584].) Mr. Dillon says: "The court will have to regard all the circumstances of the particular city or corporation, the objects sought to be attained, and the necessity which exists for the ordinance." (2 Dillon on Municipal Corporations, 5 ed., sec. 599 ; 4 ed., sec. 327 ; also *Atlantic etc. Co.* v. *Philadelphia*, 190 U. S.

167, [47 L. Ed. 995, 3 Sup. Ct. Rep. 817] ; *Dobbins* v. *Los Angeles,* 195 U. S. 239, [49 L. Ed. 169, 25 Sup. Ct. Rep. 18] ; *Evison* v. *Chicago etc. Co.,* 45 Minn. 375, [11 L. R. A. 434, 48 N. W. 6] ; *Clason* v. *Milwaukee,* 30 Wis. 323 ; *Austin* v. *Austin Cem. Assoc.,* 87 Tex. 338, [47 Am. St. Rep. 114, 28 S. W. 528].)

The business of carrying on a cemetery is lawful. (*Los Angeles* v. *Hollywood Cem. Assoc.,* 124 Cal. 349, [71 Am. St. Rep. 75, 57 Pac. 153].) The manner of conducting it may be injurious, or the surrounding conditions and circumstances may be such that it may tend to public injury. It is consequently held that the manner of conducting cemeteries may be regulated, and that such regulation may even go to the length of forbidding them altogether in places in which it may be reasonably supposed that a cemetery would cause injury to the public health. (*Odd Fellows Cem. Assoc.* v. *San Francisco,* 140 Cal. 232, [73 Pac. 987] ; *Laurel Hill Cem.* v. *San Francisco,* 152 Cal. 472, [14 Ann. Cas. 1080, 27 L. R. A. (N. S.) 260, 93 Pac. 70].) In the latter case we said: ''The right to prohibit interment in a given territory rests upon the conditions existing in that territory. Where a cemetery in which it is proposed to make interments is located in a thickly settled community, further interments there may be prohibited because the burial of dead bodies in close proximity to the habitations of the living has a tendency to endanger the health of large numbers of persons. Where, however, the place in which it is proposed to bury the dead is remote from human habitations, or is close to but few dwellings, the absolute prohibition of interments is an unreasonable restriction of a lawful business, not fairly justified or required for the preservation of the public health, and will not be sustained by the courts.'' The decision sustained the prohibition of a cemetery in the center of the densely populated residence district of San Francisco.

The right of the local legislative body to regulate and prohibit the maintenance of cemeteries is placed on the ground that they may endanger life or health by corrupting the surrounding atmosphere, or the waters of wells, streams, or springs in the vicinity, by reason of emanations from the bodies in process of decay. Such prohibitions could not be upheld on the ground that they are not pleasant to the eye, or that they are not agreeable subjects of contemplation, or

they are a source of annoyance to nervous or superstitious persons, or that they make the vicinity less attractive for a dwelling-place, or for business, and thereby lessen the value of adjoining lands. (1 Wood on Nuisance, p. 6; *Monk v. Packard*, 71 Me. 309, [36 Am. Rep. 315]; *Barnes* v. *Hathorn*, 54 Me. 124; *New Orleans* v. *Wardens*, 11 La. Ann. 244; *Clark* v. *Lawrence*, 6 Jones Eq. (N. C.) 86, [78 Am. Dec. 241]; *Lakeview* v. *Rose Hill Cem. Assoc.*, 70 Ill. 191, [22 Am. Dec. 71]; *Westcott* v. *Middleton*, 43 N. J. Eq. 484, [11 Atl. 490].)

The practice of cremation has been revived in civilized communities in comparatively recent times, and it is advocated mainly on the ground that it is safer for the living, more sanitary, than ordinary burial in a cemetery. (7 Ency. Brit., 11 ed. 403, article on "Cremation.") The practice has become general and crematories are now so common in many of the larger cities of the United States that the courts may take judicial notice of the usual method of operation. The corpse is placed in a crucible, entirely closed except the necessary vents for the escape of gases, and there subjected to intense heat, whereby, in a few hours, at most, it is entirely consumed, or reduced to ashes. The resulting gases are necessarily free from disease germs. It was at one time contended in England, chiefly on moral or religious grounds, that the practice of cremation was unlawful. The question was set at rest in 1884 by the decision in *Regina* v. *Price* (L. R. 12 Q. B. Div. 255), declaring the act lawful, unless done in such manner as to amount to a legal nuisance.

The neighborhood in which plaintiffs propose to erect and maintain a crematory is not of a character that requires its suppression or prohibition, even if it were inherently as injurious to public health or convenience as a cemetery. Four other cemeteries adjoin that of plaintiffs on its westerly side and three more, among them the Cypress Lawn Cemetery, aforesaid, are in close proximity. There are few dwellings in the immediate vicinity and no buildings devoted to any business, except that of burying the dead. It is entirely clear that the operation of another crematory in that vicinity will be in nowise injurious to the public health, comfort, or convenience, and that it will not injure adjacent property. The advance of such property in price on the market may be retarded, owing to the aversion many people have to a residence near

a graveyard. But this, as we have seen, is not a ground for the exercise of the police power. (See, also, *Varney* v. *Williams,* 155 Cal. 320, [132 Am. St. Rep. 88, 21 L. R. A. (N. S.) 741, 100 Pac. 867], on this point.) It is difficult to conceive of any reason for the belief that a crematory is more obnoxious in this respect than a graveyard. It must be admitted that it is not so much subject to general disfavor.

It is conceded, of course, that if a crematory is, or may be, operated in a manner which may cause injury to the public health, comfort, or convenience, the local legislative authority may make reasonable regulations of the manner of conducting it so as to decrease or prevent such injury. But considering its location, it cannot be claimed that this crematory cannot be conducted without public injury, nor that if erected and carried on in the usual way, or in the manner proposed by plaintiffs, it will constitute a public nuisance or cause public injury. It is only when the public health, safety, convenience, or welfare is or may be jeopardized that the police power may be invoked for its protection by restriction or regulation of the private rights of persons and property. (*Matter of Miller,* 162 Cal. 694, [124 Pac. 427].) The ordinance in question cannot be upheld as a police measure and as it prohibits the plaintiffs from using their property in a lawful business and in an innocent manner, it must be declared void as an unwarranted infringement of the right of acquiring, possessing, and protecting property guaranteed to all persons by the first section of our state constitution.

The doctrine that an action will lie to enjoin the enforcement of a municipal ordinance in cases where such enforcement will cause substantial and irreparable injury to private property or private property rights and in which there is no adequate remedy in the ordinary course of law, is now too well settled to require discussion. The doctrine is stated and the cases supporting it are cited in 2 McQuillin on Municipal Corporations, section 805. (See, also, *Dobbins* v. *Los Angeles,* 195 U. S. 241, [49 L. Ed. 169, 25 Sup. Ct. Rep. 18]; *Davis etc. Co.* v. *Los Angeles,* 189 U. S. 218, [47 L. Ed. 778, 23 Sup. Ct. Rep. 498]; *Ex parte Young,* 209 U. S. 146, [14 Ann. Cas. 764, 13 L. R. A. (N. S.) 932, 52 L. Ed. 714, 28 Sup. Ct. Rep. 441]; *Philadelphia* v. *Stimson,* 223 U. S. 621, [56 L. Ed. 570, 32 Sup. Ct. Rep. 340]; *Savage* v. *Jones,* 225 U. S. 521, [56

L. Ed. 1182, 32 Sup. Ct. Rep. 715].)   The complaint, there-
fore, states a cause for relief by injunction.

The judgment and order are affirmed.

Sloss, J., and Angellotti, J., concurred.